IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOSHMEN JOHNSON,<br><br>               Petitioner,<br><br>     vs.<br><br>DAVID BAUGHMAN, Warden, California State Prison, Sacramento,[1]<br><br>               Respondent. | No. 2:16-cv-01362-JKS<br><br>MEMORANDUM DECISION |

Doshmen Johnson, a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Johnson is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California State Prison, Sacramento. Respondent has answered, and Johnson has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On August 27, 2008, Johnson was charged with the murder of Perry Steele. The information additionally alleged as enhancements that Johnson intentionally committed the murder by discharging a firearm from a vehicle, that the murder was committed for the benefit of a criminal street gang, and that Johnson personally discharged a firearm, causing death. Johnson pleaded not guilty, denied the special allegations, and proceeded to a jury trial. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Johnson and the evidence presented at trial:

> On April 14, 2008, at approximately 1:00 a.m., Perry Steele, accompanied by Omari O'Neil and Franki Jones, was driving to a liquor store on Del Paso Boulevard.

---

[1] David Baughman, Warden, California State Prison, Sacramento, is substituted for Dave Davey, former Warden, California State Prison, Corcoran. FED. R. CIV. P. 25(c).

> Steele and O'Neil were members of the Del Paso Heights Bloods (DPHB), a criminal street gang; Jones was the girlfriend of Fred Patton, another DPHB member, who was at that time in jail.
> Jones, who was in the rear passenger seat behind the driver, testified that while Steele was stopped at a traffic light, she saw [Johnson] in the front passenger seat of a black four-door car next to them. [Johnson] was trying to get Steele's attention, and Jones so informed Steele. Steele opened his car door and [Johnson] asked Steele if he had "weed." Steele replied no and shut the car door.
> Steele drove to the liquor store, and as he, O'Neil, and Jones were getting out of Steele's car, the black car containing [Johnson] drove in behind them. Jones heard somebody from the black car yell, "[W]here are you from," and [Johnson] began shooting, fatally wounding Steele. The black car then drove off.
> Detective Robert Quinn, an expert on criminal street gangs, testified that [Johnson] was a member of TNA (Tearin Niggas Apart), which is a subset of the street gang NHGC (North Highland Gangster Crips), and that Steele was a member of DPHB, a rival gang. Quinn opined that gang rivalry was the motive for the killing of Steele and that the killing was done to benefit the street gang to which [Johnson] belonged.
> Although [Johnson] did not testify, he called as an expert witness Dr. Mitchell Eisen, who testified regarding the unreliability of eyewitness identification by persons under stress and who may have been influenced in their identification by other factors.

*People v. Johnson*, No. C063252, 2011 WL 4906741, at *1 (Cal. Ct. App. Oct. 11, 2011).

At the conclusion of deliberations, the jury found Johnson guilty of first-degree murder and also found true all the special allegations. The trial court sentenced Johnson to life imprisonment without the possibility of parole ("LWOP") for the murder with the discharge of a firearm from a motor vehicle enhancement, plus 25 years to life imprisonment for the personal discharge of a firearm causing death enhancement, plus 10 years' imprisonment for the gang enhancement.

Through counsel, Johnson appealed his conviction, arguing that: 1) the trial court erroneously admitting portions of a MySpace page, alleged to belong to Johnson, which the prosecution argued supported the gang enhancement; 2) the evidence was legally insufficient to support the jury's guilty verdict on the murder charge; and 3) the imposition of the criminal conviction fee assessment, authorized by statute effective after the offense date, violated his

2

protection against Ex Post Facto laws.² Johnson filed a counseled petition for review in the California Supreme Court, raising his evidentiary and sufficiency of the evidence claims. The Supreme Court denied review without comment on December 21, 2011.

Johnson then filed in the Superior Court a counseled petition for habeas relief. In that petition, Johnson claimed that: 1) trial counsel was ineffective for failing to present cell phone records which Johnson claimed would have shown that he was not at the scene of the shooting; 2) newly-discovered evidence demonstrated that he was actually innocent; 3) the newly-discovered evidence, corroborated by the cell phone record data, warranted an order to show cause and an evidentiary hearing; 4) the admission of "cumulative, inflammatory and prejudicial gang evidence" from the MySpace account deprived Johnson of his right to a fair trial; and 5) the LWOP sentence, which was imposed for an offense occurring when Johnson was 17 years old, violated the Eighth Amendment. In a reasoned opinion, the superior court denied Claims 1 through 4 but ordered Respondent to show cause with respect to Claim 5. Respondent conceded that Johnson's sentence violated U.S. Supreme Court precedent, and the court vacated the sentence for re-sentencing in a manner consistent with *Miller v. Alabama*, 567 U.S. 460 (2012).³ Johnson was subsequently resentenced, based on the stipulation of the parties, to an aggregate term of 50 years to life imprisonment.

---

² Johnson also argued on direct appeal that the 10-year imprisonment term imposed for the gang enhancement was erroneous because he received a LWOP sentence. The prosecution agreed that the imprisonment term attached to the gang enhancement should be stricken, and the Sacramento Superior Court struck the 10-year enhancement on its own motion.

³ In *Miller*, the Supreme Court held that the "Eighth Amendment forbids a sentencing scheme that mandates [LWOP] for juvenile offenders." *Miller*, 567 U.S. at 479.

Again proceeding through counsel, Johnson filed a petition for habeas relief in the Supreme Court of California. In that petition, Johnson again argued that: 1) trial counsel was ineffective for failing to present cell phone records which Johnson claimed would have shown that he was not at the scene of the shooting; 2) newly-discovered evidence demonstrated that he was actually innocent; and 3) the newly-discovered evidence, corroborated by the cell phone record data, warranted an order to show cause and an evidentiary hearing. After ordering and obtaining an informal response by Respondent, the California Supreme Court summarily denied the habeas petition on April 27, 2016.

Johnson then filed a counseled Petition for a Writ of Habeas Corpus to this Court on June 17, 2016, the timeliness of which Respondent does not contest. *See* 28 U.S.C. § 2244(d)(1)(A). That Petition is now before the undersigned judge and ripe for adjudication.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Johnson argues that trial counsel provided ineffective assistance by failing to present cell phone records which Johnson claims would have shown that he was not at the scene of the shooting.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that
4

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

5

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Johnson raises a single claim on federal habeas review: that trial counsel was ineffective for failing to present cell phone records which, he alleges, would have shown that he was not at the scene of the shooting. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Johnson must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Johnson raised his ineffective assistance of counsel claims in counseled habeas petitions filed in the California Superior and Supreme Courts. The "last reasoned decision" addressing the claim is the Superior Court's denial:

> Petitioner next claims that his trial counsel was ineffective in failing to introduce at trial cell phone records that were then available to counsel, that would have shown that petitioner was not at the scene of the shooting. He claims that the subscriber of the cell phone was Candace Bledsoe as shown by Metro PCS records; that Bledsoe told a defense investigator that she was the subscriber but had given the phone to petititioner; that petitioner's brother Steve Diggs told a defense investigator that Digg's cell phone number 707-712-1260 was in the Metro PCS record of calls made by that phone on the night of the shooting; that Diggs told the investigator that petitioner's phone number at the time of the shooting was the phone in question and that petitioner had called Diggs that night using that number several times; and that the Metro PCS records show that between 11:00 p.m. on April 13, 2008 and 2:00 a.m. on April 14, 2008 there were a total of 50 calls to and from the phone in question from 14 different cell sites in the greater

7

> Sacramento area, as shown on the maps attached as Exhibit J,[4] which shows a pattern of travel a distance in a direction away from the site of the shooting at the time of the shooting.
>
> Petitioner also attaches as Exhibit G the Metro PCS records, which show that at 12:52 a.m. on April 14, 2008 the phone in question had called 702-712-1260, and again at 1:17 a.m. that same morning. Petitioner claims the shooting took place at 1:15 a.m. However, Exhibit G also shows that there was no phone call made between 1:01 a.m. and 1:13 a.m. The Exhibit J map does not make it appear to be impossible for the holder of the phone to have driven back to the scene, done the shooting, then returned to backtrack along the path that had earlier been taken, and that there may have been a discrepancy between the Metro PCS determination of time and time known by whoever determined it was the exact time of the shooting. If the shooting had actually taken place several minutes earlier, it might have been possible for the holder of the phone to have doubled back to make it appear that the holder of the phone was not in the area at the time of the shooting. And, petitioner attaches a copy of a Sacramento police report as Exhibit B, showing "Reported: Apr-14-2008 01:15:25" and "FELONY ASSAULT-LESS THAN 15 MINUTES AGO," which could also support such a theory.
>
> Nor does petitioner establish with reasonably available documentary evidence that the phone in question was in fact in his possession at the time in question, or that he had called anyone, including his brother, on the phone to show that it was in his possession. Instead, petitioner attaches only hearsay written statements from a defense investigator regarding the investigator's conversations with Bledsoe and Diggs, attached as exhibits F and G, and another regarding the investigator's conversations with Amber Carmichael, attached as Exhibit K. These are not competent to establish that petitioner had the phone in his possession, such that the phone records would even be relevant.

Docket No. 20-2 at 8-10.

The record additionally indicates that the cell phone issue arose when Johnson moved post-verdict for a new trial and to replace his trial counsel pursuant to *Marsden*.[5] In support of his request for a new trial, Johnson cited counsel's "[f]ailure to entail cell phone records as

---

[4] The exhibits attached to Johnson's habeas petitions are attached as exhibits to the instant Petition at Docket No. 2-1.

[5] *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).

8

evidence of defendant innocence." The trial court held a *Marsden* motion at which defense counsel explained:[6]

> In regard to the particular issues raised in this case, the cell phone records were requested in this case and we went to great lengths to get numerous cell phone records because there was some claim at one point in the defense that Mr. Johnson had a cell phone.
> We actually hired a cell phone expert to review records, and he determined that a cell phone was miles away from the murder scene at the time of the murder. Then the question became how can we put that cell phone in Mr. Johnson's possession at the time because people can easily pass cell phones to others and share cell phones.
> I made a tactical decision after discussing it at length with Mr. Johnson that that would do more harm than good.
> Initially, there was an alibi defense that Mr. Johnson was at a party at the time of the murder and never left the party. And despite my direction to him not to talk about this defense while making calls and taking visits at the jail, his girlfriend Latoya Howard came to visit him and they talked about this and the DA was fully aware about this conversation they had about this party and never leaving it. Well that party was nowhere ne[ar] where the cell phone was, according to the expert, so that presented a serious proof problem.
> To prove that he had the cell phone would have required calling numerous witnesses with dubious character, some of his friends and relatives.
> And the actual subscriber to the cell phone is not Mr. Johnson, it's a girl. We talked to her, and I thought just putting her on the stand alone would cause serious problems for him because of the whole theory that this is a gang-related shooting, and I didn't want to bolster that for obvious reasons. Almost all of the witnesses that would have been required to be called were of that character.
> On top of that, there were certain phone calls made at or near the time of the murder that Mr. Johnson could not explain, and I thought if you were going to go down that road you gotta be able to explain all these things.
> So after mulling it over and mulling it over, and we talked about it several times, the decision was made that with a strong defense that I believe we had going to trial as we did when there is only one eyewitness that has demonstrated herself not to be believable on a variety of fronts and even admitted so during the trial, thought that was a better tactic to take.

Docket No. 19-5 at 238-40.

---

[6] Although the transcript of the *Marsden* hearing was initially filed under seal, a previously-assigned magistrate judge of this Court reviewed the transcript and, upon the parties' stipulation, ordered that the transcript be unsealed and transmitted to the parties. Docket No. 18.

In his counseled Traverse, Johnson argues that counsel's statements at the hearing should be disregarded because they "were not evidence and were not at all reliable." Putting aside the fact that Johnson fails to establish that the states courts improperly relied on counsel's hearing statements, particularly given that the superior court's denial rested on shortcomings in the proposed evidence rather than on counsel's reasons for declining to present it, such argument wholly ignores that this court is required to "strongly presume[]" that counsel made such decision in the exercise of his professional judgment. *See Strickland*, 466 U.S. at 690; *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (recognizing a strong presumption that counsel took actions "for tactical reasons rather than through sheer neglect"). The state court's determination that Johnson failed to provide sufficient evidence to overcome the presumption neither contravened nor unreasonably applied federal law. Given its shortcomings, as detailed in the superior court's thorough denial of Johnson's claim, the state court reasonably found that the evidence in the exhibits attached to Johnson's Petition was of insufficient exculpatory value to demonstrate that counsel was ineffective. Johnson is not entitled to relief on this claim.

## V. CONCLUSION AND ORDER

Johnson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 10, 2018.

       /s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge